**Shawn M. Lindsay, OSB 02069**
ShawnLindsay@MHGM.com
MARKOWITZ, HERBOLD, GLADE
 & MEHLHAF, P.C.
Suite 3000 Pacwest Center
1211 S.W. Fifth Avenue
Portland, OR  97204-3730
Tel:  (503) 295-3085
Fax:  (503) 323-9105

    Of Attorneys for Defendant Anova Food, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| KING TUNA, INC., a California corporation,<br><br>                    Plaintiff,<br><br>    v.<br><br>ANOVA FOOD, INC., a Georgia corporation,<br><br>                    Defendant. | No. 07-6191-TC<br><br>**REPLY MEMORANDUM**<br>**In Support Of Defendant's Motion To Dismiss For Lack Of Personal Jurisdiction And Improper Venue**<br><br>**Hearing:**<br>**Date: October 25, 2007**<br>**Time: 3:00 p.m**. |

**ARGUMENT IN REPLY**

The Court has previously explained, "the imposition of broad territorial concepts of

personal jurisdiction on the commercial uses of the Internet has dramatic implications" and

threatens to open up small businesses to the "litigious nightmare of being subject to suit in every

jurisdiction in this country." Millennium Enters., Inc. v. Millennium Music, LP, 33 F. Supp. 2d

907, 921 (D. Or. 1999).  The Ninth Circuit has stated that there must be "something more" than

Internet activity to establish "that the defendant purposefully (albeit electronically) directed his

activity in a substantial way to the forum state." Cybersell Inc. v. Cybersell Inc., 130 F.3d 414,

**Page 1 -   REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

418 (9th Cir. 1997). Indeed, the nature of the Internet requires courts to be cautious about avoiding "the unjustifiable extreme of universal jurisdiction" based on ownership of a website and, consequently, "the mere existence of a worldwide website, regardless of whether the site is active or passive, is an insufficient basis on which to find that the advertiser has purposely directed its activities at residents of the forum state." Digital Control Inc. v. Boretronics, Inc., 161 F. Supp. 2d 1183, 1186-87 (W.D. Wash. 2001) (emphasis added) (copy attached).

Undeterred, King Tuna, Inc. ("King Tuna") insists that it can sue Anova Food, Inc. ("Anova") in Oregon solely on the basis of one shipment to an unrelated third-party in Salem, Oregon and, apparently, on the basis of a worldwide website. King Tuna also argues, incorrectly, that Anova purposefully availed itself of Oregon's laws by filing its motion to disqualify plaintiff's counsel in this case. Jurisdiction is lacking, and dismissal is appropriate.

Furthermore, King Tuna's attempt to avoid dismissal by requesting jurisdictional discovery should be rejected. A plaintiff who fails to make a prima facie case for jurisdiction over the defendants is not entitled to discovery, Butchers' Union Local No. 498 v. SDC Inv., Inc., 788 F. 2d 535, 541 (9th Cir. 1986); United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, (1st Cir. 2001); Tuttle v. Lorillard Tobacco Co., 118 F. Supp.2d 954, 959 (D. Minn. 2000), and the "refusal to grant discovery cannot be reversed except upon the clearest showing that the dismissal resulted in actual and substantial prejudice to the litigant," Wells Fargo & Co. v. Wells Fargo Express Co., 556 F.2d 406, 430 n.24 (9th Cir. 1977).

## I.    Anova did not and does not direct its activities toward Oregon.

King Tuna's stab at Oregon jurisdiction rests solely on a specific-jurisdiction theory. It concedes, by failing to argue the point, that general jurisdiction does not exist here. (Pl.'s Opp'n Mem. at p. 7.) Specific jurisdiction requires that a defendant's contacts with a forum state be

directly related to the dispute.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).

King Tuna can point to no activities in Oregon that have anything to do with the parties themselves.  It also fails to declare its business dealings in Oregon.  In an attempt to show the Constitutionally-mandated "minimum contact," King Tuna alleges that an unrelated third-party resident of Salem, Mr. Jeff Trembly, placed a one-time order through Anova's website in March 2007.  (Pl.'s Opp'n Mem. at p.4.)  Although King Tuna has not made that factual allegation in its complaint, it maintains that, by Mr. Trembly's one-time unsolicited order via Internet, jurisdiction lies in Oregon.  (Pl.'s Opp'n Mem. at pp. 7-8.)  King Tuna, not surprisingly, cites no case finding jurisdiction in such circumstances.  The contacts with Mr. Trembly are irrelevant at any rate.  "Only those contacts with the forum that were created by the defendant, rather than those manufactured by the unilateral acts of the plaintiff, should be considered for due process purposes."  Tech Heads, Inc. v. Desktop Serv. Ctr., 105 F. Supp.2d 1142, 1151 (D. Or. 2000).[1] Anova's response to an Internet order by Mr. Trembly does not amount to a "systematic and continuous relationship" between Anova and Oregon.  NMOTION, Inc. v. Environmental Tectonics Corp., 196 F. Supp. 2d 1051, 1057 (D. Or. 2001).

To clarify the record, Anova attempted to sell tuna via an interactive Internet website during a seventeen-month time period from April 2006 until August 2007.  (Supplemental Declaration of Doug Brinsmade in Support of Motion To Dismiss For Lack Of Personal

---

[1] King Tuna relies on Mr. Trembly's declaration in which he states he purchased four pounds of sashimi grade tuna for $59.97 from Anova's website.  Attached to Mr. Trembly's declaration are photographs apparently taken at the time of this shipment detailing the Styrofoam shipping container, the shipping label, information on dry ice, and the product's standard food label.  Taking such detailed photographs is highly unusual for an ordinary consumer of frozen fish, and suggests that Mr. Trembly purchased the four pounds of tuna, not for his personal consumption, but for litigation purposes.

**Page 3 -    REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

Jurisdiction and Improper Venue, filed contemporaneously herewith ("Brinsmade Suppl. Decl."),

¶ 2.)  During that period, Anova made a total of eight direct sales to seven consumers through the

website.  (Id.)  Those sales totaled just $786.81.  (Id.)  In view of King Tuna's memorandum in

opposition, Anova re-examined its records and learned that one of the eight Internet sales was to

Mr. Trembly on March 20, 2007 and another was to a Ms. Claudia Prevost, a resident of

Independence, Oregon, on July 12, 2007.  (Id.)  Mr. Brinsmade did not know of these two

Internet sales when he submitted his original declaration and now clarifies the record with his

supplemental declaration.  To make clear, Mr. Brinsmade's statement in his original declaration

that Anova made approximately "two or three small shipments that might have been destined to

a distributor in Oregon," these orders were made though a California independent distributor,

Pacific Seafood, which requested Anova to make f.o.b. shipment to Pacific Seafood's satellite

office in Oregon.  (Id. ¶ 3.)  Anova's sole present means of selling its products is via distributors.

(Id.)  Direct sales through its website were less than 0.000002% of its total sales in the United

States during the above time period.  (Id.)

## II.    King Tuna's bid for jurisdiction rests on nothing more than a one-time purchase by an unrelated third-party via a worldwide website.

In the absence of any "continuous and systematic" contacts with Oregon, King Tuna

seeks to manufacture jurisdiction over Anova from a one-time sale through Anova's website.

King Tuna posits two intertwined lines of argument.  First, it labors against the well-established

cases from this Court and the Ninth Circuit holding that a worldwide website – be it active or

passive – is insufficient to establish jurisdiction.  Second, King Tuna makes conclusory and

unsupported assertions alluding to "activities within Oregon," as if its written repetitions would

make it so.  Neither approach holds water.

The law of the Ninth Circuit is clear: there must be "something more" than Internet activity to establish "that the defendant purposefully (albeit electronically) directed his activity in a substantial way to the forum state." Cybersell, 130 F.3d at 418 (9th Cir. 1997).  Operating an "active" website, through which a consumer in any state can potentially purchase a product, does not create jurisdiction.  "The fact that someone who accesses [a] defendants' Web site can purchase a [product] does not render defendants' actions 'purposefully directed' at this forum." Millennium Enters., Inc., 33 F. Supp. 2d at 921.

The only connection King Tuna points to is the www.anovafoodinc.com website, which for a period of seventeen months offered products for sale, but did not focus specifically on Oregon in any way.  King Tuna offers the declaration of Mr. Trembly, but it does not make any difference.  According to Mr. Trembly, he bought four pounds of Tuna from Anova's website, took numerous photos of the shipping container and packaging, and, apparently, sought out King Tuna's counsel to supply these photos.  Like the purchaser of the single compact disc in Millennium, it appears that Mr. Trembly likely purchased the shipment of tuna for litigation purposes.  This court in Millennium noted that such a purchase was "nothing more than an attempt by plaintiff to manufacture a contact with this forum sufficient to establish personal jurisdiction . . . [s]uch questionable and unprofessional tactics cannot subject defendants to jurisdiction in this forum." Id. at 911.

### III. Anova's motion to disqualify plaintiff's counsel is not "purposeful availment" of Oregon's laws.

Oddly, King Tuna offers as a second argument that Anova purposefully availed itself of the laws of Oregon by filing its motion to disqualify King Tuna's counsel.  But the purposeful availment analysis looks to the question of conducting activities in Oregon, and whether a

Page 5 -    **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

particular defendant can reasonably anticipate being haled into court in the subject jurisdiction. The need to file a motion to disqualify has no bearing on this analysis. <u>Id.</u> at 922 (stating, "specific jurisdiction is not proper unless the forum-related contacts give rise or relate to the <u>plaintiff's cause of action</u>") (emphasis added.)

**IV.    Oregon jurisdiction is not reasonable.**

Specific jurisdiction also requires that its exercise "must be reasonable." <u>Schwarzenegger</u>, 374 F.3d at 802.  King Tuna does not attempt to rebut any but one of the seven factors identified in Anova's motion to dismiss and the case law, making light of the burden of defending a case half a continent away.  (Pl.'s Opp'n Mem. at p. 10.)  Further, King Tuna's silence on any business it conducts in Oregon is revealing.  Also, King Tuna omits six of the seven factors, such as the fact that Georgia, Florida or Federal Circuit law would apply to their claims; the fact that all of the parties' are located outside of Oregon; the fact that King Tuna ordinarily handles its legal affairs with an out-of-state lawyer; the fact that a logical alternative forum exists; and the fact that Oregon's interest in resolving claims arising in Georgia or Florida is minimal, and the fact that King Tuna is not located in Oregon, but is a California corporation with its primary sales and shipping facility in Perth Amboy, New Jersey.  (Brinsmade Suppl. Decl. ¶ 4.)  By failing to contest these above factors, King Tuna has implicitly conceded them.

**V.    No grounds for discovery exist.**

Lacking any evidence to justify filing its complaint in Oregon, King Tuna now requests a fishing expedition.  Fed. R. Civ. P. 12(b)(2) expressly permits a defendant to move to dismiss at the outset of the case "for lack of jurisdiction over the person."  When jurisdiction is at issue, "plaintiffs bear the burden of . . . making an initial, prima-facie showing of jurisdictional facts at the pleading stage . . . ."  <u>Wells Fargo & Co.</u>, 556 F.2d at 430 n.24.  Before defendants are

subjected to the considerable expense of discovery and additional briefing, a plaintiff must offer more than speculation that jurisdictional facts might be found. Butchers' Union, 788 F.2d at 541.

Where "a plaintiff offers only speculation or conclusory assertions about contacts with a forum state," discovery is properly denied. Estate of Bank v. Swiss Valley Farms Co., 286 F. Supp. 2d 514 (D. Md. 2003) (quoting Carefirst of Maryland, Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 402 (4th Cir. 2003)) (copy attached). The Ninth Circuit has also made clear it "will not interfere with the trial court's refusal to grant discovery except upon the clearest showing" of "actual and substantial prejudice[.]" Wells Fargo & Co., 556 F.2d at 430 n.24.

For instance, in Butchers' Union, 788 F.2d at 541, the Ninth Circuit upheld the trial court's denial of jurisdictional discovery where the plaintiffs, like here, submitted only that they "believe[d]" discovery would establish contacts. "This speculation," the appeals court wrote, "does not satisfy the requirement that they make the 'clearest showing of actual and substantial prejudice.'" Id.

This case, in fact, is on all fours with Estate of Bank. There, like here, the plaintiffs sought to establish jurisdiction as a result of the defendant's interactive website. There, like here, the plaintiffs responded to a motion to dismiss by asking the court to authorize a "fishing expedition" for evidence of Internet sales to [forum] residents, the existence of which defendant affirmatively denies. Id. There, like here, the plaintiffs "offered no more than bare allegations" compared with declarations "by the defendant denying the existence of contacts." Id. The district court there denied the request, writing that the plaintiffs fell "far short" of meeting the standard for obtaining jurisdictional discovery. Here, King Tuna's discovery request should meet with a similar fate and be rejected.

Page 7 -    **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

## CONCLUSION

King Tuna fails to argue that general jurisdiction exists here and, consequently, concedes that point. Its assertion of specific jurisdiction is based on one isolated Internet sale to an unrelated third-party totaling less than $120.00. Accordingly, Anova's motion to dismiss for lack of personal jurisdiction and improper venue should be granted.

DATED this 2nd day of October, 2007.

MARKOWITZ, HERBOLD, GLADE
   & MEHLHAF, P.C.


By:   */s/ Shawn M. Lindsay*
        Shawn M. Lindsay, OSB #02069
        (503) 295-3085
        Of Attorneys for Defendant

KINGAN\137784

**Page 8 -  REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE**

Westlaw.

161 F.Supp.2d 1183                                                                                    Page 1
161 F.Supp.2d 1183
**(Cite as: 161 F.Supp.2d 1183)**

Ⓒ

Digital Control Inc. v. Boretronics Inc.
W.D.Wash.,2001.

United States District Court,W.D. Washington,
At Seattle.
DIGITAL CONTROL INCORPORATED,
Plaintiff,
v.
BORETRONICS INC. and Willie Lessard,
Defendants.
**No. C01-0074L.**

Sept. 6, 2001.

Owner of patents for transmitters designed to assist in remote control of underground drilling operations sued competitor for infringement. On defendant's motion to dismiss for lack of personal jurisdiction, the District Court, Lasnik, J., held that exercise of personal jurisdiction would not comport with due process.

Motion granted.
West Headnotes

**[1] Federal Civil Procedure 170A ⬤ 1825**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1825 k. Motion and Proceedings Thereon. Most Cited Cases

**Federal Civil Procedure 170A ⬤1835**

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1835 k. Matters Deemed Admitted. Most Cited Cases

Where motion to dismiss for lack of personal jurisdiction is decided without benefit of evidentiary hearing, plaintiff need only make prima facie showing that jurisdiction is proper, with all disputed facts construed in light most favorable to plaintiff. Fed.Rules Civ.Proc.Rule 12(b)(2), 28 U.S.C.A.

**[2] Federal Courts 170B ⬤417**

170B Federal Courts
    170BVI State Laws as Rules of Decision
        170BVI(C) Application to Particular Matters
            170Bk417 k. Federal Jurisdiction. Most Cited Cases
District court's determination of its personal jurisdiction over defendant is made by reference to law of state in which it sits.

**[3] Courts 106 ⬤12(2.1)**

106 Courts
    106I Nature, Extent, and Exercise of Jurisdiction in General
        106k10 Jurisdiction of the Person
            106k12 Domicile or Residence of Party
                106k12(2) Actions by or Against Nonresidents; "Long-Arm" Jurisdiction in General
                    106k12(2.1) k. In General. Most Cited Cases
Washington's long arm statute extends court's personal jurisdiction to limits of federal due process. U.S.C.A. Const.Amend. 14; West's RCWA 4.28.185.

**[4] Courts 106 ⬤96(7)**

106 Courts
    106II Establishment, Organization, and Procedure
        106II(G) Rules of Decision

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

106k88 Previous Decisions as Controlling or as Precedents
106k96 Decisions of United States Courts as Authority in Other United States Courts
106k96(7) k. Particular Questions or Subject Matter. Most Cited Cases
Law of Federal Circuit determines whether exercise of personal jurisdiction comports with requirements of due process in patent infringement actions. U.S.C.A. Const.Amend. 5.

**[5] Constitutional Law 92 ⬥3965(3)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3961 Jurisdiction and Venue
                92k3965 Particular Parties or Circumstances
                    92k3965(3) k. Business, Business Organizations, and Corporations in General. Most Cited Cases
    (Formerly 92k305(5))
Court's exercise of personal jurisdiction over defendant in patent case comports with due process if: (1) defendant purposefully directed activities at residents of forum state; (2) injuries for which recovery is sought arise out of or are related to defendant's activities; and (3) assertion of personal jurisdiction over defendant comports with traditional notions of fair play and substantial justice. U.S.C.A. Const.Amend. 5.

**[6] Constitutional Law 92 ⬥3965(3)**

92 Constitutional Law
    92XXVII Due Process
        92XXVII(E) Civil Actions and Proceedings
            92k3961 Jurisdiction and Venue
                92k3965 Particular Parties or Circumstances
                    92k3965(3) k. Business, Business Organizations, and Corporations in General. Most Cited Cases
    (Formerly 92k305(5))

**Patents 291 ⬥288(3)**

291 Patents
    291XII Infringement
        291XII(C) Suits in Equity
            291k288 Jurisdiction
                291k288(3) k. Residence and Place of Infringement. Most Cited Cases
Exercise of personal jurisdiction over non-resident patent infringement defendant would not comport with due process; although defendant had advertised nationwide via web site, industry journal advertisements and toll-free telephone number, it had received no inquiries or orders from forum residents. U.S.C.A. Const.Amend. 5.

**[7] Federal Courts 170B ⬥76.5**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
                170Bk76.5 k. Contacts with Forum State. Most Cited Cases
Until advertiser is actually faced with and makes choice to dive into particular forum, mere existence of worldwide web site, regardless of whether site is active or passive, is insufficient basis on which to find that advertiser has purposely directed its activities at residents of forum state, for purpose of determining personal jurisdiction.

*1184 Brian Chung Park, Dorsey & Whitney LLP, Seattle, WA, for Digital Control Inc, a Washington corporation, Plaintiff.

Stuart R. Dunwoody, Davis Wright Tremaine LLP, Seattle, WA, Jeffrey R. Stone,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

161 F.Supp.2d 1183                                                                      Page 3
161 F.Supp.2d 1183
**(Cite as: 161 F.Supp.2d 1183)**

Kurt J. Niederluecke, Briggs & Morgan, St Paul, MN, for Boretronics Inc, a Minnesota corporation, Willie Lessard, a Minnesota resident, Regence Blueshield, a Washington corp., Defendants.

ORDER GRANTING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

LASNIK, District Judge.

[1] This matter comes before the Court on "Defendants' Motion to Dismiss for Lack of Personal Jurisdiction." This litigation arises out of defendants' alleged infringement of various patents held by plaintiff on transmitters designed to assist in the remote control of underground drilling operations. Defendants, residents of Minnesota, seek dismissal of plaintiff's *1185 claims for lack of personal jurisdiction. Because this issue is being decided without the benefit of an evidentiary hearing, plaintiff need only make a *prima facie* showing that jurisdiction is proper in this district, with all disputed facts construed in the light most favorable to plaintiff. *See Graphic Controls Corp. v. Utah Med. Prods.,* 149 F.3d 1382, 1383 n. 1 (Fed.Cir.1998).

[2][3] "The district court's determination of a party's amenability to suit is made by reference to the law of the state in which it sits." *Peterson v. Kennedy,* 771 F.2d 1244, 1262 n. 12 (9th Cir.1985), *cert. denied,* 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187 (1986). Washington's long arm statute, RCW 4.28.185, provides six separate bases for the exercise of jurisdiction, only two of which are potentially applicable here: (1) the "transaction of any business within this state" and (2) the "commission of a tortious act within this state." Despite the rather narrow terms of the statute, the Washington Supreme Court has held that the state's long-arm statute "extends jurisdiction to the limit of federal due process." *Shute v. Carnival Cruise Lines,* 113 Wash.2d 763,

771, 783 P.2d 78 (1989).

[4][5] Both plaintiff and defendants agree that the law of the Federal Circuit determines whether the exercise of personal jurisdiction comports with the requirements of due process in patent infringement actions. The Federal Circuit applies a three-part test: (1) defendants must have "purposefully directed [their] activities at the residents" of the forum state; (2) the injuries for which recovery is sought must have arisen out of or be related to defendants' activities; and (3) the assertion of personal jurisdiction over defendants must comport with traditional notions of fair play and substantial justice. *Akro Corp. v. Luker,* 45 F.3d 1541, 1545-46 (Fed.Cir.), *cert. denied,* 515 U.S. 1122, 115 S.Ct. 2277, 132 L.Ed.2d 281 (1995).

[6] The relevant facts regarding defendants' contacts with Washington state are undisputed.FN1 After designing and manufacturing a product which allegedly infringed on plaintiff's patents, defendants placed advertisements in two industry journals, created a web site on which its products were offered for sale, and maintained a toll-free phone number to handle customer inquiries and orders. The journals, web site, and phone number all had national scope and could be accessed by residents of Washington. Defendants managed to sell one of the offending products to a company in Florida before being notified that plaintiff believed the products infringed their patents. Defendants ceased operations shortly thereafter. Defendants did not receive any inquiries from or make any sales to the citizens of Washington. Other than the nationwide solicitations discussed above, defendants made no other effort to cultivate a market in this state.

FN1. For purposes of this discussion, the Court will assume, as

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

161 F.Supp.2d 1183                                                                                    Page 4
161 F.Supp.2d 1183
**(Cite as: 161 F.Supp.2d 1183)**

plaintiff has done, that Mr. Lessard is the alter ego of Boretronics such that the actions and conduct of one should be attributed to the other.

Under the facts presented here, the Court finds that defendants' limited contacts with the State of Washington are not such that they "should reasonably anticipate being haled into court" here. *World-Wide Volkswagen v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). While there are a few analogous cases which could support plaintiff's assertion of jurisdiction, FN2 none of those cases is from the Federal Circuit and they generally involve claims that the Internet advertisement**1186** itself infringed on a patent or trademark. In *Inset Sys., Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161 (D.Conn.1996), for example, the defendant's web site used a domain address which infringed plaintiff's trademark. Thus, the availability of defendant's web site in the forum state was, in and of itself, a source of continuing injury as plaintiff's potential customers inadvertently hit defendant's site and/or were confused by the similarity of names, products, and services. More importantly for purposes of this motion, the legal analysis in *Inset* is far from compelling: after citing two cases in which national advertising was coupled with inquiries from, correspondence with, and sales to citizens of the forum state, the court jumped to the conclusion that the ready availability of the Internet and its potential to reach thousands of Connecticut residents justified the exercise of jurisdiction over defendant even though there was no indication that the offending web site had actually been seen by a Connecticut resident or that defendant had engaged in any commercial activity within the forum. As recognized by another court, *Inset* represents the "outer limits" of the personal jurisdiction analysis. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952

F.Supp. 1119, 1125 (W.D.Pa.1997).

FN2. *See Haelan Prods., Inc. v. Beso Biological Research, Inc.,* 43 U.S.P.Q.2d 1672 (E.D.La.1997); *Inset Sys., Inc. v. Instruction Set, Inc.,* 937 F.Supp. 161 (D.Conn.1996).

[7] The vast majority of the cases cited by the parties and the law of the Ninth Circuit require something more than nationwide advertising in order to justify the exercise of personal jurisdiction. FN3 Given the nature of the Internet and the purpose behind the jurisdictional analysis, the "web site plus" rule developing in the case law appears to be a good rule of thumb for evaluating jurisdiction-creating contacts in Internet cases. Such an analysis avoids the unjustifiable extreme of universal jurisdiction while at the same time subjecting defendants to suit wherever they have purposely directed their activities. Posting information on a web site tells one very little about the purpose or intent of the advertiser. The medium, by its very nature, provides immediate and virtually uncontrollable worldwide exposure. While the advertiser may in fact be willing to engage in commerce with anyone anywhere in the world, it may simply be seeking customers in a very localized area commensurate with its distribution or service facilities. Until the advertiser is actually **1187** faced with and makes the choice to dive into a particular forum, the mere existence of a worldwide web site, regardless of whether the site is active or passive, is an insufficient basis on which to find that the advertiser has purposely directed its activities at residents of the forum state.

FN3. *See 3D Sys., Inc. v. Aarotech Labs., Inc.,* 160 F.3d 1373 (Fed.Cir.1998) (subsidiary was subject to personal jurisdiction after it responded to e-mail inquiries from

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

the forum, issued price quotes on request, discussed the product with a potential partner, purchased parts from the forum, and sent promotional materials to the forum state; parent's maintenance of web site did not establish personal jurisdiction where all inquiries were forwarded to and handled by the subsidiary); *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244 (10th Cir.2000) (defendant's continued use of a server in the forum state, even after it learned that it was not authorized to do so, that the server was located in the forum state, and that the excess use was causing problems for the true owner, supported jurisdiction); *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996) (defendant's contract with plaintiff, which contemplated continued use of plaintiff's server in the forum state, supported jurisdiction); *CoolSavings.Com., Inc. v. IQ Commerce Corp.,* 53 F.Supp.2d 1000 (N.D.Ill.1999) (defendant's interactive coupon web site was an infringement which, coupled with nationwide access to the site, actual use by citizens of the forum state, and additional efforts to create a market in the forum state, justified the exercise of personal jurisdiction); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997) (web site which resulted in thousands of contracts with residents of the forum state supported jurisdiction). *See also Shute v. Carnival Cruise Lines,* 897 F.2d 377, 381 (9th Cir.1990) (solicitation of business within the forum "will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business"), *rev'd on other grounds,* 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991).

In the case at hand, there is no evidence from which the Court could conclude that defendants have availed themselves of the privilege of conducting business in Washington or otherwise made the purposeful decision to market products to residents of this State. Had defendants received an inquiry or order from a Washington resident, they could then have determined whether, in light of their business plan and the laws of the forum, they wanted to jump into this market and potentially subject themselves to litigation here. Based on the undisputed facts in this case, defendants never had such an opportunity. The Court finds that defendants' use of indiscriminate, nationwide forms of advertising does not give rise to an inference of purposeful or deliberate action toward Washington residents and would not cause defendants to anticipate being haled into court here.[FN4]

FN4. To the extent plaintiff argues that the mere offer to sell the infringing products in Washington creates sufficient minimum contacts with the forum, no injury is associated with the unaccepted offers made in this case and the Federal Circuit has generally considered such a statutory violation only in the context of the "arising out of" prong of the jurisdictional analysis. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 21 F.3d 1558, 1571 (Fed.Cir.1994); *3D Sys., Inc.,* 160 F.3d at 1378. Even if an offer to sell an infringing product could create the necessary minimum contacts on which personal jurisdiction could be founded, it is not at all clear that the exercise of jurisdic-

161 F.Supp.2d 1183
161 F.Supp.2d 1183
**(Cite as: 161 F.Supp.2d 1183)**

Page 6

tion over defendants in this case would be reasonable and fair under the third prong of *Akro.*

For all of the foregoing reasons, defendants' motion to dismiss for lack of personal jurisdiction is GRANTED. The Clerk of Court is directed to enter judgment without prejudice in favor of defendants and against plaintiff.

W.D.Wash.,2001.
Digital Control Inc. v. Boretronics Inc.
161 F.Supp.2d 1183

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

286 F.Supp.2d 514                                                               Page 1
286 F.Supp.2d 514
**(Cite as: 286 F.Supp.2d 514)**

C

Estate of Bank v. Swiss Valley Farms Co.
D.Md.,2003.

United States District Court,D. Maryland.
ESTATE of Stephen BANK, et al.
v.
SWISS VALLEY FARMS, CO.
**No. CIV. JFM-02-3102.**

Sept. 30, 2003.

Estate of deceased employee brought action alleging various tort claims against employer in connection with employee's alleged exposure to harmful chemicals during his employment. On employer's motion to dismiss, the District Court, Motz, J., held that: (1) employer's operation of website did not subject it to personal jurisdiction in Maryland; (2) jurisdictional discovery was not warranted; and (3) transfer of venue was warranted.

Motion granted.
West Headnotes

**[1] Federal Courts 170B ⬅➔96**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk96 k. Affidavits and Other
Evidence. Most Cited Cases
When defendant files motion to dismiss for lack of personal jurisdiction, plaintiff bears burden of proving grounds for jurisdiction by preponderance of evidence.

**[2] Federal Courts 170B ⬅➔96**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk96 k. Affidavits and Other
Evidence. Most Cited Cases
Plaintiff opposing defendant's motion to

dismiss for lack of personal jurisdiction must produce competent evidence to sustain jurisdiction, including sworn affidavits.

**[3] Federal Courts 170B ⬅➔96**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk96 k. Affidavits and Other
Evidence. Most Cited Cases
If defendant's motion to dismiss for lack of personal jurisdiction is decided without hearing, plaintiff is required only to make prima facie showing of jurisdiction.

**[4] Federal Courts 170B ⬅➔96**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk96 k. Affidavits and Other
Evidence. Most Cited Cases
In ruling on motion to dismiss for lack of personal jurisdiction, court should draw all reasonable inferences from proof offered by parties in plaintiff's favor.

**[5] Federal Courts 170B ⬅➔76.10**

170B Federal Courts
    170BII Venue
        170BII(A) In General
            170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
                170Bk76.10 k. Defendant's Activities in Forum State; Cause of Action Arising Therefrom. Most Cited Cases
Specific personal jurisdiction over nonresident defendant is available when plaintiff's claim arises out of defendant's contacts with forum state.

**[6] Federal Courts 170B ⬅➔76.5**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

286 F.Supp.2d 514
286 F.Supp.2d 514
**(Cite as: 286 F.Supp.2d 514)**

170B Federal Courts
  170BII Venue
    170BII(A) In General
      170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
        170Bk76.5 k. Contacts with Forum State. Most Cited Cases
General personal jurisdiction is available only where nonresident defendant's contacts with forum state are continuous and systematic.

**[7] Federal Courts 170B ☞76.5**

170B Federal Courts
  170BII Venue
    170BII(A) In General
      170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
        170Bk76.5 k. Contacts with Forum State. Most Cited Cases
With regard to non-residents, general jurisdiction is ordinarily reserved for those defendants who have such substantial contacts with forum state that they may be considered essentially domiciled within that state.

**[8] Federal Courts 170B ☞81**

170B Federal Courts
  170BII Venue
    170BII(A) In General
      170Bk77 Corporations, Actions by or Against
        170Bk81 k. Sales, Solicitation and Advertising. Most Cited Cases
Illinois corporation's operation of website generally offering its goods for sale did not subject corporation to general personal jurisdiction in Maryland, absent evidence of actual sales to Maryland residents.

**[9] Federal Courts 170B ☞76.1**

170B Federal Courts

170BII Venue
  170BII(A) In General
    170Bk76 Actions Against Non-Residents; "Long-Arm" Jurisdiction in General
      170Bk76.1 k. In General.
Most Cited Cases
  (Formerly 170Bk76)
Having plaintiff domiciled in forum state is neither necessary nor sufficient condition for exercise of personal jurisdiction over nonresident defendant.

**[10] Federal Civil Procedure 170A ☞1269.1**

170A Federal Civil Procedure
  170AX Depositions and Discovery
    170AX(A) In General
      170Ak1269 Grounds and Objections
        170Ak1269.1 k. In General.
Most Cited Cases
Estate of Maryland resident asserting wrongful death claim against out-of-state corporation was not entitled to conduct jurisdictional discovery regarding corporation's possible sales to Maryland residents through its website, absent evidence calling into doubt corporation's affidavit stating that it had no sales to Maryland residents.

**[11] Federal Civil Procedure 170A ☞1269.1**

170A Federal Civil Procedure
  170AX Depositions and Discovery
    170AX(A) In General
      170Ak1269 Grounds and Objections
        170Ak1269.1 k. In General.
Most Cited Cases
Where evidence falls far short of pointing towards personal jurisdiction over nonresident defendant, court is within its discretion in denying jurisdictional discovery.

**[12] Federal Courts 170B ☞101**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

170B Federal Courts
   170BII Venue
      170BII(B) Change of Venue
         170BII(B)1 In General; Venue Laid in Proper Forum
            170Bk101 k. In General; Convenience and Interest of Justice. Most Cited Cases

Transfer of venue may be properly granted to avoid any procedural complications that might result from dismissal, not solely to avoid those procedural complications that have already arisen. 28 U.S.C.A. § 1406(a).

**[13] Federal Courts 170B ⟜121**

170B Federal Courts
   170BII Venue
      170BII(B) Change of Venue
         170BII(B)2 Venue Laid in Wrong Forum
            170Bk121 k. In General. Most Cited Cases

District court does not abuse its discretion in denying transfer of venue where plaintiff's attorney has filed in improper forum on basis of obvious error. 28 U.S.C.A. § 1406(a).

**[14] Federal Courts 170B ⟜122**

170B Federal Courts
   170BII Venue
      170BII(B) Change of Venue
         170BII(B)2 Venue Laid in Wrong Forum
            170Bk122 k. Particular Determinations. Most Cited Cases

Transfer, rather than dismissal, was warranted after determination that court lacked personal jurisdiction over nonresident defendant in wrongful death action, absent indication that plaintiffs' selection of forum was result of obvious error, or that countervailing concerns weighed in favor of dismissal. 28 U.S.C.A. § 1406(a).

**\*515** Nathan I. Finkelstein, Bethesda, MD, Laurie B. Horvitz, Finkelstein and Horvitz, Bethesda, MD, for Edith Bank.

James J. O'Neill, III, Harold M. Walter, Tydings and Rosenberg, LLP, Baltimore, MD, for Swiss Valley Farms Co.

MEMORANDUM

MOTZ, District Judge.

This action has been brought by the Estate of Stephen Bank, et al. ("the Estate") against Swiss Valley Farms, Co. ("Swiss Valley"). Decedent Stephen Bank was an employee of Swiss Valley, Co., an Illinois corporation involved in the manufacture and distribution of dairy products. The Estate alleges various tort claims against Swiss Valley in connection with the alleged exposure of Mr. Bank to harmful chemicals during his employment.

Swiss Valley has filed a motion to dismiss for lack of personal jurisdiction, or in the alternative for failure to state a claim upon which relief may be granted. For the reasons stated below, this court holds that it cannot exercise personal jurisdiction over defendant. Pursuant to 28 U.S.C. § 1406, this case is transferred to the Southern District of Iowa.

I.

Defendant Swiss Valley employed Stephen Bank at two of its dairy laboratories in Iowa from 1981 to 1993. Following the culmination of his employment with Swiss Valley, Mr. Bank relocated to Maryland. Plaintiffs allege that during the term of his employment, Mr. Bank was repeatedly exposed to harmful chemicals, and contracted acute mylogenous leukemia as a result. Mr. Bank died on November 2, 2001, more than a year after being diagnosed with leukemia.

After Mr. Bank's death, his family learned that he had been exposed to hazardous

chemicals during his tenure at Swiss Valley, and that other Swiss Valley employees who had worked in the same laboratories had also developed cancer. Plaintiffs have sued Swiss Valley alleging various tort claims arising out of the circumstances surrounding Mr. Bank's death.

Swiss Valley is an Illinois corporation with its principal place of business in Iowa. It has no resident agent in Maryland, maintains no employees in Maryland and is neither qualified nor registered to do **\*516** business in Maryland. (Affidavit of S. Woodworth, Exhibit A to Defendant's Motion to Dismiss at ¶ 5, 18). Swiss Valley has never sold, and does not presently sell any products in the state of Maryland, nor has it otherwise transacted business in the state of Maryland. (*Id.* at ¶ 7, 10, 14). It has no place of business, offices, warehouses, branches, dealers or franchisees in Maryland. (*Id.* at ¶ 8). The entirety of the corporation's employment relationship with Mr. Bank transpired in Iowa.

Until early May 2003, Swiss Valley maintained a website which permitted the online sale of goods to consumers throughout the United States. This site was discontinued on May 1, 2003 allegedly due to lack of sales. (Second Affidavit of S. Woodworth, Exhibit A to Defendant's Reply Memorandum in Support of Motion to Dismiss at ¶ 3). Plaintiffs offer no statistics on the volume of business Swiss Valley transacted through the website, and no evidence of any sales to Maryland residents. Swiss Valley asserts that it has not made any sales to Maryland residents through the website or otherwise. (*Id.* at ¶ 1). In addition to its website, Swiss Valley maintains a toll-free hotline through which orders may be placed, and distributes its products in twenty-five states. FN1

FN1. Swiss Valley's products are distributed and sold exclusively in Minnesota, Wisconsin, Illinois, Iowa, Missouri, Nebraska, Arizona, California, Colorado, Indiana, Massachusetts, Michigan, New Mexico, New Jersey, New York, Oklahoma, Pennsylvania, Kansas, Washington, North Dakota, South Dakota, Tennessee, Texas, Utah and Virginia. (Affidavit of S. Woodworth at ¶ 4).

## II.

[1][2][3] When a defendant files a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proving grounds for jurisdiction by a preponderance of the evidence. *Mylan Laboratories, Inc. v. Akzo, N.V.,* 2 F.3d 56, 59-60 (4th Cir.1993). This burden requires the plaintiff to produce competent evidence to sustain jurisdiction, including, for example, sworn affidavits. *Nichols v. G.D. Searle & Co.,* 783 F.Supp. 233, 235 (D.Md.1992). If the jurisdiction issue is decided without a hearing, the plaintiff is required only to make a *prima facie* showing of jurisdiction. *Mylan,* 2 F.3d at 60.

[4] In determining the existence of jurisdiction, the court should draw all "reasonable inferences" from the proof offered by the parties in the plaintiff's favor. *Id.* at 62. This does not mean, however, that the courts must "look solely to the proof presented by the plaintiff in drawing such inferences." *Id.* Rather, the court must consider "all relevant pleading allegations in the light most favorable to the plaintiff," and draw reasonable inferences therefrom. *Id.*

## III.

"A federal court sitting in diversity jurisdiction may exercise personal jurisdiction over a non-resident defendant if (1) an applicable state long-arm statute confers jur-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

isdiction and (2) the assertion of that jurisdiction is consistent with constitutional due process." *Nichols,* 991 F.2d at 1199. Constitutional due process requires that a non-resident defendant have sufficient minimum contacts "such that the maintenance of the suit does not offend traditional notions of fair play or substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

The Estate relies on Section 6-103(b)(4) of Maryland's long arm statute to assert jurisdiction over Swiss Valley. Md.Code Ann., Cts. & Jud. Proc. § 6-103(b)(4). **\*517** That section provides for jurisdiction over persons who

cause tortious injury in the State or outside of the State by an act or omission outside the State if he regularly does or solicits business, engages in any other persistent course of conduct in the State or derives substantial revenue from goods, food, services, or manufactured products used or consumed in the State.

The Maryland Court of Appeals has consistently held that the long-arm statute is co-extensive with the requirements of due process, and thus the first and second inquiries may be performed as one. *Joseph M. Coleman & Associates, Ltd. v. Colonial Metals,* 887 F.Supp. 116, 118 (D.Md.1995), *Mohamed v. Michael,* 279 Md. 653, 370 A.2d 551, 553 (1997).

[5][6] Under due process analysis, there are two types of personal jurisdiction: specific and general. Specific jurisdiction is available when the plaintiff's claim arises out of the defendant's contacts with the forum state. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). General jurisdiction is available only where the defendant's contacts with the forum

state are "continuous and systematic." *Id.* at 415, 104 S.Ct. at 1872. The level of contacts required for the exercise of general jurisdiction is "significantly higher" than that required for the exercise of specific jurisdiction. *ESAB Group, Inc. v. Centricut, Inc.,* 126 F.3d 617, 623 (4th Cir.1997).

The Estate's cause of action has not arisen from Swiss Valley's contacts with Maryland, and thus specific jurisdiction is not available. Moreover, plaintiffs do not assert that specific jurisdiction exists. General jurisdiction may be asserted however, if it can be shown that Swiss Valley has "continuous and systematic" contacts with Maryland. *Helicopteros,* 466 U.S. at 415, 104 S.Ct. at 1872.

Plaintiffs base their contention of general jurisdiction on Swiss Valley's operation of a website offering its products for sale.[FN2] Plaintiffs offer no evidence of any sales to Maryland residents via this website, but only suggest in the face of specific denials by defendant that such sales may have occurred, and occurred with such frequency that they provide the "continuous and systematic" contacts necessary for the exercise of general jurisdiction.[FN3]

> FN2. Plaintiffs also contend that Swiss Valley's operation of a toll-free hotline number, acceptance of orders by facsimile, amenability of its sales representative to a purchase by a Maryland resident, and its possible joint venture with a company having a substantial presence in Maryland all suggest that Swiss Valley has made sales to Maryland residents and has derived substantial revenues therefrom. As with the website, plaintiffs offer no evidence of any sales made through the hotline or by facsimile to Maryland residents. In addition, defendant as-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

286 F.Supp.2d 514
286 F.Supp.2d 514

**(Cite as: 286 F.Supp.2d 514)**

Page 6

serts by affidavit that the proposed joint venture was never formed, and, in any event, never anticipated doing business in Maryland. (Second Affidavit of S. Woodworth, at ¶ 4). In light of this lack of evidence, plaintiffs' claims must, of necessity, rest on Swiss Valley's operation of a website.

FN3. In response to defendant's affidavit declaring that Swiss Valley has made no sales to Maryland residents, plaintiffs argue, for example, that "it is *certainly possible* that sales to Maryland residents *could be sufficient* to obtain general jurisdiction," and that "the contacts between Swiss Valley and Maryland *could be more substantial*" than those present in a case with similar facts where general jurisdiction was found lacking (emphasis added)(Plaintiffs' Opposition to Defendant's Motion to Dismiss, 7).

[7] In the context of personal jurisdiction, the Fourth Circuit has cautioned that "broad constructions of general jurisdiction should be generally disfavored." *Nichols,* 991 F.2d at 1200. In fact, with regard to non-residents, general jurisdiction**\*518** is ordinarily reserved for those defendants who have such substantial contacts with the forum state that they may be considered "essentially domiciled" within that state. *Atlantech Distribution, Inc. v. Credit Gen. Ins. Co.,* 30 F.Supp.2d 534 (D.Md.1998).

[8] In light of this heightened standard, the Fourth Circuit has held that "limited advertising and solicitation" by a non-resident defendant in the forum state do not provide a sufficient basis for general jurisdiction. *Ratliff v. Cooper Labs., Inc.,* 444 F.2d 745, 748 (4th Cir.1971). Without evidence of actual sales made to Maryland

residents, it would seem that the operation of a website that merely offers the possibility of transacting cannot be characterized as anything more than "advertising and solicitation," and thus is equally insufficient for jurisdictional purposes.

The Fourth Circuit has deemed general jurisdiction absent in circumstances where the defendant possessed far more substantial contacts with the forum state than exist between Swiss Valley and Maryland. In *Ratliff,* the defendant maintained five employees who resided in the forum state, promoted the company's products and occasionally took orders, and those contacts were deemed insufficient for general jurisdiction. *Id.* at 746. In *Nichols,* the court relied on *Ratliff* in finding general jurisdiction lacking where a pharmaceutical company maintained 17 to 21 employees in Maryland to perform advertising and solicitation functions, held meetings in Maryland three times a year, and accumulated annual revenue of between \$9 and \$13 million from its business in Maryland during a four year period. 991 F.2d at 1198, 1200. Finally, in *ESAB Group,* the court found no general jurisdiction even though the defendant had 26 customers who were residents of the forum state (representing 1% of all of its customers and .079% of gross annual sales) and defendant had purchased between \$10,000 and \$20,000 worth of parts from a supplier in the forum state. 126 F.3d at 621.

The increasing use of the Internet as a medium for business has introduced new questions into the law of personal jurisdiction. Consistent with its caution against broad constructions of general jurisdiction, the Fourth Circuit has noted that while technological advances may alter the landscape of personal jurisdiction, "it nonetheless has remained clear that technology cannot eviscerate the constitutional limits

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

on a state's power to exercise jurisdiction over a defendant." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.,* 293 F.3d 707, 711 (4th Cir.2002).

The Fourth Circuit has explicitly rejected the notion that general personal jurisdiction may be founded on the basis of Internet presence alone.

> We are not prepared at this time to recognize that a State may obtain general jurisdiction over out of state persons who regularly and systematically transmit electronic signals into the State via the Internet based solely on those transmissions. Something more would have to be demonstrated. And we need not decide today what that "something more" is because ALS Scan has shown no more.

*Id.* at 715. *See also Coastal Video Communications, Corp. v. Staywell Corp.,* 59 F.Supp.2d 562, 571-72 (E.D.Va.1999)(noting that the mere existence of an interactive website is insufficient for the exercise of general jurisdiction in the absence of proof of continuous and systematic contact between the forum state and the website).

Indeed, premising general personal jurisdiction on mere Internet presence would risk the evisceration of constitutional limits which the Fourth Circuit declared impermissible in *ALS Scan.* 293 F.3d at 711. If **\*519** presence alone were deemed sufficient, a non-resident defendant "would presumably be subject to general personal jurisdiction in every jurisdiction in the country, thereby allowing a plaintiff to sue it for any matter anywhere in the nation. This the Constitution does not permit." *Atlantech,* 30 F.Supp.2d at 537.

The Fourth Circuit did not articulate the "something more" required in addition to Internet presence for the exercise of gener-

al jurisdiction because the plaintiffs in *ALS Scan* failed to show anything more. 293 F.3d at 715. Similarly, plaintiffs in this case have failed to show anything more than Swiss Valley's Internet presence. Plaintiffs insist that Swiss Valley *may* have made sales to Maryland residents that would provide the requisite contacts, but several recent cases suggest that even evidence of actual sales to residents of the forum state may not satisfy the "something more" requirement. *See Robbins v. Yutopian Enterprises, Inc.,* 202 F.Supp.2d 426, 429 (D.Md.2002) (forty-six transactions with Maryland residents over a 10 1/2 month period, made through a website and a toll-free number, deemed insufficient for the exercise of general personal jurisdiction). *Cf. Gator.Com Corp. v. L.L. Bean, Inc.,* 341 F.3d 1072, 1077-78 (9th Cir.2003) (holding that L.L. Bean's online business (sales of over $200 million in 2000, accounting for 16 percent of total sales) and its "consistent, ongoing and significant sales effort that has included California for a number of years," were sufficient for the exercise of general personal jurisdiction, but acknowledging that even given the defendant's high volume of online business, the case presented a "close question.").

Plaintiffs argue that the nature of Swiss Valley's website makes this court's exercise of jurisdiction permissible according to the "sliding scale" set forth in *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997), and adopted by the Fourth Circuit in *ALS Scan,* 293 F.3d at 713. Under the *Zippo* model, the constitutionality of exercising jurisdiction may be assessed according to the "nature and quality of commercial activity" conducted by a defendant over the Internet. *Zippo,* 952 F.Supp. at 1124. The model labels those websites that merely post information as "passive," and concludes that

personal jurisdiction is not available over such sites. At the opposite end of the spectrum are websites where a defendant "clearly does business over the Internet," and personal jurisdiction is deemed proper with regard to those sites. While Swiss Valley's website might be characterized as "doing business" since it permitted visitors to order goods online, this characterization is of minimal relevance. First of all, defendant's website may have offered the possibility of "doing business," but plaintiffs present no evidence that any business has actually been transacted through the website. Secondly, the *Zippo* model was intended to apply to questions of specific jurisdiction, and specific jurisdiction is not at issue here. *See Atlantech,* 30 F.Supp.2d at 537. Lastly, although the *Zippo* test has been acknowledged to be of some use in analyzing general personal jurisdiction, the mere classification of the Swiss Valley website as capable of "doing business" over the Internet provides an insufficient basis for the exercise of general jurisdiction by this court without more. *Id.* (compiling cases). To conclude otherwise would permit the exercise of general jurisdiction on the basis of mere Internet presence, a result the Fourth Circuit has rejected. *ALS Scan,* 293 F.3d at 715.

Plaintiffs point to one case where general jurisdiction was found to be proper in part based on sales made to forum state residents through a website. *See Mieczkowski v. Masco Corp.,* 997 F.Supp. 782 (E.D.Tex.1998). This case, however; is readily distinguishable because the court **\*520** in *Mieczkowski* did not rely solely on website activity to justify jurisdiction, as plaintiffs would have this court do in the instant case. By contrast, the defendant company had sold and shipped nearly 6 million dollars worth of products to residents of the forum state over the preceding six years, and in the previous year alone, had concluded over 250 transactions with forum state residents, totaling over $700,000.00 in sales. *Id.* at 785. In addition, defendant's sales over the previous four years accounted for 3.2% of its gross sales income, a direct mailing was sent to residents twice a year which resulted in actual sales, and defendant purchased 0.2% of its furniture from a company in the forum state. *Id.* Finally, defendant operated a website that was accessible to 2.2 residents of the forum state. *Id.* In rendering its decision to exercise general jurisdiction, the court cautioned that it was not deciding "whether standing alone" the defendant's website was a sufficient basis for general jurisdiction, but rather that it was relying on the "combination" of traditional business contacts and the website. *Id.* at 788. Thus, *Mieczkowski* cannot guide the result here, where jurisdiction would have to be based on defendant's website "standing alone."

[9] The Supreme Court has acknowledged that "a plaintiff's residence may, because of the defendant's relationship with the plaintiff, enhance defendant's contacts with the forum." *Keeton v. Hustler Magazine, Inc.* 465 U.S. 770, 780, 104 S.Ct. 1473, 1481, 79 L.Ed.2d 790 (1984). However, having a plaintiff domiciled in the forum state is neither a necessary nor a sufficient condition for the exercise of personal jurisdiction. The Fourth Circuit has found general personal jurisdiction lacking where resident plaintiffs were involved and the defendant possessed more substantial contacts with the forum state than in the instant case. *ESAB Group,* 126 F.3d at 624. The court in *ESAB Group* noted that the defendant's contacts with South Carolina fell short of constitutional requirements despite the fact that "South Carolina courts in this case would be seeking to vindicate the interests of their own citizens." *Id.* The same result must follow here. While Mary-

land may have some interest in the resolution of this case since it was the state of residence of Mr. Banks, and continues to be the state of residence for Mr. Banks' dependents, that interest cannot overcome the otherwise insufficient showing of contacts made by plaintiffs.

IV.

[10] Plaintiffs request in their opposition that they be permitted to conduct limited discovery to establish sales to Maryland residents via Swiss Valley's website. This request will be denied.

The Federal Rules of Civil Procedure provide for broad discovery, however, they also vest substantial discretion in the district courts to resolve any discovery matters that arise. *See Mylan,* 2 F.3d at 64. For example, "[w]hen a plaintiff offers only speculation or conclusory assertions about contacts with a forum state, a court is within its discretion in denying jurisdictional discovery." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.,* 334 F.3d 390, 402 (4th Cir.2003). *See also Rich v. KIS Cal., Inc.,* 121 F.R.D. 254, 259 (M.D.N.C.1988)("Where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by defendants, the court need not permit even limited discovery confined to issues of personal jurisdiction should it conclude that such discovery will be a fishing expedition."). The Fourth Circuit has denied discovery in circumstances analogous to the instant case where the plaintiffs offered no more than bare allegations of sufficient contacts against affidavits by the defendants denying the existence of contacts.**521** *McLaughlin v. McPhail,* 707 F.2d 800, 806 (4th Cir.1983).

[11] Plaintiffs insist that discovery is ne-

cessary in order provide the court with details of sales Swiss Valley may have made to Maryland residents. Plaintiffs cite *Coastal Video* as support for its contention that discovery should be permitted. 59 F.Supp.2d 562. In *Coastal Video* the court granted plaintiffs' motion for discovery to investigate "significant gaps" in the record regarding the nature and extent of defendant's traditional business contacts and its Internet-based contacts with the forum state. *Id.* at 572. The defendant in that case maintained a registered agent in Virginia, was qualified to do business in Virginia, sold and distributed products in Virginia, sent catalogs and mailings containing order forms to Virginia residents, and operated a website through which online purchases could be made. *Id.* at 564. The evidence in *Coastal Video,* a combination of traditional and Internet-based contacts, "pointed toward a finding of personal jurisdiction," and thus, discovery was proper. *Weinstein v. Todd Marine Enter., Inc. et al.,* 115 F.Supp.2d 668, 676 (E.D.Va.2000). Where, as here, the evidence "falls far short" of pointing towards personal jurisdiction, this court is within its discretion in denying discovery. *Id.* at 676-77. Granting plaintiffs' motion for discovery would authorize a "fishing expedition" for evidence of Internet sales to Maryland residents, the existence of which defendant affirmatively denies. *Id.* at 677.

Plaintiffs also suggest that this court should conclude that the affidavit of Swiss Valley's vice president of marketing is inaccurate because it fails to specifically mention the existence of the company's now inactive website. Defendant has asserted, in the form of affidavits, that no sales were made to Maryland residents through its now inactive website. Plaintiffs offer no evidence to the contrary. Accordingly, the fact that defendant's motion to dismiss failed to make specific mention of an inactive web-

site through which no contacts, sales or otherwise, were made with Maryland residents, does not compel this court to infer that the defendant's omissions were made in bad faith.

Finally, plaintiffs urge this court to infer from the timing of the discontinuance of the website by Swiss Valley (nearly two weeks prior to the filing of defendant's motion to dismiss) that sales were made to Maryland residents through the website. That is not a reasonable inference for this court to draw. If Swiss Valley were, in fact, conducting substantial business with Maryland residents via its website such that its contacts might rise to the level of "systematic and continuous," it is hard for this court to believe that defendant would discard an otherwise thriving online business merely to avoid suit in Maryland.

This court finds no evidence of fraud on the part of Swiss Valley or any indication of an intention to mislead. *Carefirst,* 334 F.3d at 403. Accordingly, plaintiffs' request for discovery on this matter will be denied.

### V.

Since this court has concluded that it cannot exercise personal jurisdiction over the defendant, it must be determined whether this case should be dismissed or transferred to another district. Pursuant to 28 U.S.C. § 1406(a), this court has the discretion to transfer the case to another federal district court in which the case could have been brought, if such transfer is in the interests of justice. Plaintiffs request that this court grant a transfer, and defendant urges this court to dismiss.

Defendant argues that transfer is inappropriate because plaintiffs have failed to demonstrate how their claim might be time-barred if transfer were not granted. **\*522** However, defendant misunderstands

the intended role of section 1406(a), and the manner in which it has been interpreted by the courts. The Supreme Court has identified "a congressional purpose underlying section 1406(a) favoring the transfer of cases when procedural obstacles 'impede an expeditious and orderly adjudication on the merits.' " *Sinclair v. Kleindienst,* 711 F.2d 291, 293-94 (D.C.Cir.1983)(quoting *Goldlawr v. Heiman,* 369 U.S. 463, 466-67, 82 S.Ct. 913, 915-16, 8 L.Ed.2d 39 (1962)). Transfer had been deemed proper under section 1406 "when there is an obstacle-either incorrect venue, absence of personal jurisdiction, or both-to a prompt adjudication on the merits in the forum where originally brought." *Dubin v. United States,* 380 F.2d 813, 816 (5th Cir.1967).

[12] In accordance with these precedents, the Fourth Circuit has adopted a reading of section 1406(a) authorizing transfer "for any reason which constitutes an impediment to a decision on the merits in the transferor district but would not be an impediment in the transferee district." *Porter v. Groat,* 840 F.2d 255 (4th Cir.1988). As mentioned above, lack of personal jurisdiction is one of the "impediments" upon which transfer may be premised. *See Dubin,* 380 F.2d at 816; *Sinclair,* 711 F.2d at 294. Thus, while transfer may be "particularly appropriate" where the plaintiff's cause of action would be time-barred in the event this court declined to transfer, this does not mean that transfer is unavailable where the statute of limitations has not yet run. *See Sinclair,* 711 F.2d at 294. By contrast, transfer may be properly granted to avoid any procedural complications which might result from dismissal, not solely to avoid those procedural complications which have already arisen. *See Robbins,* 202 F.Supp.2d at 431.

[13] A district court does not abuse its discretion in denying transfer where the

plaintiff's attorney has filed in an improper forum on the basis of "obvious error." *Nichols,* 991 F.2d at 1201-02. That is to say, transfer could be properly denied where "the plaintiff's attorney could reasonably have foreseen that the forum in which he/she filed was improper." *Id.* at 1202. However, it is not clear to this court that the plaintiffs' selection of this forum was the result of "obvious error." Moreover, even assuming plaintiffs did make an "obvious error" in selecting Maryland as their forum, the district court is not thereby bound to deny a request for transfer. Rather, the Fourth Circuit held only that it would not disturb a district court's exercise of discretion in denying transfer where plaintiffs' made an "obvious error" in filing in the transferor court, and noted that this did not imply that a district court would "necessarily err" in granting transfer under such circumstances. *Id.* at 1202 n. 6.

[14] Jurisdiction appears to be proper in the United States District Court for the Southern District of Iowa where the defendant's principal place of business is located, and where the alleged injuries took place. In light of the purposes underlying § 1406, and because defendant has not shown any countervailing concerns that weigh in favor of dismissal, transfer will be granted.

## VI.

Because this court has found that personal jurisdiction is lacking, defendant's 12(b)(6) motion regarding the exclusivity of the Iowa's workers' compensation as an avenue for pursuing plaintiffs' claims will not be considered.

For these reasons, this action will be transferred to the United States District Court for the Southern District of Iowa. A **\*523** separate order to that effect is being entered herewith.

D.Md.,2003.
Estate of Bank v. Swiss Valley Farms Co.
286 F.Supp.2d 514

END OF DOCUMENT

## ATTORNEY CERTIFICATE OF SERVICE

I hereby certify that on October 2, 2007, I have made service of the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND IMPROPER VENUE** on the party/ies listed below in the manner indicated:

| | | |
|---|---|---|
| Carl D. Crowell | ☐ | U.S. Mail |
| Michelle L. H. Ing | ☐ | Facsimile |
| David W. Sherman | ☐ | Hand Delivery |
| Crowell Ing, LLP | ☐ | Overnight Courier |
| P.O. Box 923 | ☐ | Email |
| Salem, OR  97308-0923 | ☒ | Electronically via USDC CM/ECF system |

DATED this 2nd day of October, 2007.

_/s/ Shawn M. Lindsay_
Shawn M. Lindsay, OSB #02069
Attorney for Defendant

**CERTIFICATE OF SERVICE**